UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RYAN WOODLE,

Plaintiff,

Case No. 1:12cv879

vs.

Magistrate Judge Bowman

BAPTIST LIFE COMMUNITIES,

Defendant.

**MEMORANDUM OF OPINION AND DECISION**

Plaintiff brings this action through counsel against defendant Baptist Life Communities ("Baptist Life") alleging that defendant discriminated against him on the basis of his alleged disability in violation of the Americans with Disabilities Act ("ADA"). This matter is now before the Court on Defendant's motion for summary judgment (Doc. 30) and the parties' responsive memoranda and supporting documents. (Docs. 3, 29, 31, 32). The parties have consented to the disposition of this matter by the Magistrate Judge. (Doc. 14). For the reasons set forth herein, the undersigned finds that Defendant's motion for summary judgment is well-taken.

**I. Background and Facts**

Baptist Life Communities owns and operates several assisted living and nursing facilities in the Northern Kentucky area, including Baptist Village of Northern Kentucky, Baptist Towers of Covington, and Baptist Convalescent Center of Newport. Plaintiff Ryan Woodle was hired by Baptist Life on April 4, 2011 to work as a full-time Human Resource Generalist at Baptist Towers. (Doc. 29, Woodle Dep., 22-23). Plaintiff was an employee at-will and no contract existed for his employment. *Id*. at p. 21.

As a Human Resource Generalist, Plaintiff was responsible for performing various human resources duties, including management of non-clinical areas relative to staffing, compensation, policy and procedure compliance, maintenance of employee files, and oversight of employee benefits. (Doc. 49, Woodle Depo., pp. 22-23). While Plaintiff was also responsible for human resources functions at Baptist Towers, different employees were responsible for human resources functions at Baptist Life's other two facilities. *Id*. at 22-23. Plaintiff was considered a member of Baptist Life's management team. *Id*. at p. 24.

In May 2011, Linda Ipp began her employment with Baptist Life as the Director of Housing, and became Plaintiff's immediate supervisor. *Id*., pp. 27-28. Ms. Ipp was the Senior Manager on site at Baptist Towers. *Id*. at p. 28. Despite the fact that Ms. Ipp was Plaintiff's direct supervisor, Plaintiff began to take great interest in Ms. Ipp's employment, including her application process and her personnel file. (Doc. 29, Exs. 1, 2, 3, 6). In this regard, Plaintiff began making inquiries regarding Ms. Ipp's employment file. *Id.,* Ex. 1. Although maintenance of employee files was one of Plaintiff's job duties, Plaintiff was informed on numerous occasions that the employment files of Senior Management employees are not maintained by human resources at the facility site, but instead are maintained at Baptist Life's corporate office. *Id*., Exs. 2, 5, 6. Despite such information, Plaintiff continued to probe into Ms. Ipp's personnel file.

Notably, on July 20, 2011, Plaintiff sent an email message to John Linder and Sandy Bishop, the Human Resource Generalists at Baptist Life's other two facilities. (Doc. 29, Ex. 1). The email centered on Ms. Ipps' personnel file and disclosed what Plaintiff perceived to be Ms. Ipp's personnel issues, namely the results of Ms. Ipp's drug

screen and her incomplete personnel file. (Doc. 29, Ex. 1). Neither Mr. Linder, nor Ms. Bishop, was responsible for human resources functions at Baptist Towers. *Id*.

The next day, Plaintiff sent an email to Dr. Robert Long, Chief Executive Officer, regarding Ms. Ipp's job application and personnel file. *Id*., Ex. 2. In addition to Dr. Long, Plaintiff also copied Robert Kester (Chief Financial Officer), Peggy Rowekamp (Director of Nursing), Lynda Schunder (Dr. Long's administrative assistant), Mr. Linder, Ms. Bishop and his own personal email account. *Id*. In so doing, Plaintiff again disclosed Ms. Ipp's private personnel information to individuals outside of the facility and to individuals with no authority over Ms. Ipp. *Id.* In addition to Ms. Ipp's personnel information, Plaintiff again disclosed information regarding Ms. Ipp's drug screen. *Id.* Plaintiff also attempted to have the Director of Nursing, Peggy Rowekamp, perform a random drug screen on Ms. Ipp.

In his reply to Plaintiff' email, Dr. Long advised Plaintiff that Ms. Ipp's application and personnel file, like all Senior Managers, was maintained at his office and that no further discussion was necessary on the subject. Woodle Depo., Ex. 2. Additionally, Dr. Long clarified the issue surrounding Ms. Ipp's drug screen, as well as Baptist Life's procedure for performing drug screens. *Id*. Dr. Long also expressed his dismay with the fact that Ms. Ipp's personal information had been disseminated to individuals with absolutely no need to have such information. *Id*. Dr. Long specifically instructed Plaintiff, and those individuals included on the email, that any further conversation regarding Ms. Ipp's personal information was unacceptable. *Id*.

Less than one hour after being explicitly instructed by Dr. Long that there was to be no further communication regarding Ms. Ipp's personal information, Plaintiff sent

another email attaching a memorandum regarding Ms. Ipp's purportedly "failed" drug screen. (Doc. 29, Ex. 3). As he had done previously, Plaintiff again copied individuals who were in no position to be privy to such information. *Id*.

An hour later, Plaintiff sent an email to Dr. Long stating that he was being discriminated against under the Americans with Disabilities Act, and also stating he had submitted a request for reasonable accommodations. (Doc. 29, Ex. 4). Dr. Long promptly responded to Plaintiff's email, acknowledging his claim of discrimination and request for reasonable accommodations. *Id*. Dr. Long explicitly stated, "I also need to know exactly what it is you are requesting as accommodations." *Id*. Plaintiff did not reply to that request.

Later that day, Dr. Long called Plaintiff to discuss his previous emails and his allegations of disability. (Doc. 29. Ex. 18, Supplemental Transcript of Phone Conversation). Unbeknownst to Dr. Long, Plaintiff recorded the conversation. *Id*. During the conversation, Dr. Long again explained to Plaintiff that the personnel files of senior-level managers, such as Linda Ipp, were maintained in Dr. Long's office and were not Plaintiff's responsibility. *Id*. at pp. 2-6, 11-12, 15-16. Dr. Long further informed Plaintiff that it was never appropriate to copy business emails containing sensitive information to his personal email account. *Id*. at p. 6. With respect to Plaintiff's alleged disability, Dr. Long told Plaintiff that he needed to submit documentation concerning the scope of his disability in conjunction with his request for a reasonable accommodation. Dr. Long noted that he had never received a request for reasonable accommodations from Plaintiff. *Id*. at p. 7. Plaintiff agreed to submit a written request to Dr. Long identifying the exact reasonable accommodations he was requesting. *Id*. at p. 14. The

following day, July 22, 2011, Dr. Long provided Plaintiff with a written statement summarizing their conversation from the prior day. (Doc. 29, Ex. 5). The document was signed by both Dr. Long and Plaintiff. *Id*., Ex. 18, pp. 7-8.

Following their phone conversation of July 21, 2011, and pursuant to Dr. Long's request for documentation of his disability, Plaintiff submitted a medical certification dated April 7, 2008 and two neuropsychological evaluations dated January 2, 2002 and May 17, 2000 respectively. (Doc. 29, Ex. 11). Each of these documents was created prior to Plaintiff's 2011 commencement of employment at Baptist Life. The neuropsychological evaluations submitted by Plaintiff, indicated that he suffers from permanent brain impairment characterized by an inability to store memories and retain new information. *Id*. Neither neuropsychological evaluation contained any information regarding a reasonable accommodation nor any reference to any type of reasonable accommodation that could be made for Plaintiff. *Id*.

Thereafter, on August 8, 2011, Plaintiff sent yet another email regarding Ms. Ipp and an alleged drug screening issue, again copying Mr. Linder and Ms. Bishop. (Doc. 29, Ex. 6). In response, Dr. Long instructed Plaintiff that his continued involvement with Ms. Ipp's personnel matters would not be tolerated. *Id*. Dr. Long informed Plaintiff that any further involvement by Plaintiff into Ms. Ipp's personnel matters would be considered gross insubordination. *Id*. Further, Dr. Long informed Plaintiff that his threats to go to the Board of Directors regarding personnel issues would also not be tolerated.

On the very same day, approximately one hour later, Plaintiff sent a series of emails to several Board members, outlining what Plaintiff perceived to be issues with Baptist Life's management. (Doc. 29, Ex. 7; *see also* Doc. 29, at pp. 83-85). Then, less

than one hour after contacting Baptist Life's Board, at 2:30 p.m., Plaintiff then forwarded one of the Board emails to Dr. Long. *Id*., Ex. 8. As a result of Plaintiff's actions, his employment was immediately terminated for insubordination. *Id*., Ex. 9.

Pursuant to Baptist Life's "Termination of Employment" policy, employment can be terminated immediately for certain offenses. (Doc. 29, Ex. 13, p. 16). Notably, the Employee Handbook provides that Baptist Life may use a progressive discipline system. However, the Handbook further provides that Baptist Life "reserves the right to forego any of the progressive disciplinary stages and move directly to an advanced stage of discipline, including immediate termination of employment. *Id*. at p, 1. Certain offenses, due to the nature of their seriousness, warrant immediate termination. One such offense is insubordination. *Id*., Ex. 13, p. 17.

Plaintiff testified that he received a copy of the Baptist Life employee handbook in which that policy was contained, and that he signed a written acknowledgement to that effect. *Id*. at p. 106; *see also* Woodle Depo. Ex. 12. Plaintiff further testified that as a human resources professional, he was familiar with Baptist Life personnel policies. Woodle Depo., p. 106.

Thereafter, on August 10, 2011, Plaintiff filed a charge of discrimination with the EEOC based on disability against Baptist Life. (Doc. 1, Ex. 3, p. 78). On August 12, 2012, the EEOC issued a determination that it is unable to conclude that the information obtained during its investigation establishes violations of the statutes. (Doc. 3, Ex., 1). The EEOC issued also a 90-day notice of right to sue letter to Plaintiff.

Plaintiff then filed the instant action on November 14, 2012, alleging that Baptist Life discriminated against him on the basis of his alleged disability in violation of the Americans with Disabilities Act ("ADA"). Baptist Life now moves for summary judgment.

**II. Analysis**

**A. Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v.*

*Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

**B. Defendant's Motion for Summary Judgment**

As detailed above, Plaintiff's complaint alleges that Defendant discriminated against him based on his disability in violation of Federal law. Specifically, Plaintiff has alleged two claims under the ADA. (Doc. 3). His first claim is that his employment was terminated because he had a disability. Plaintiff's second claim is that Baptist Life failed to provide him with a reasonable accommodation. Baptist Life now moves for summary judgment. Baptist Life argues that Plaintiff cannot establish a *prima facie* case of

disability discrimination for either claim, because he cannot show that he was otherwise qualified for his position and because he did not request an accommodation based on his disability. Assuming arguendo, that Plaintiff can establish a *prima facie* case of discrimination, Baptist Life asserts that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment and Plaintiff cannot show that Baptist Life's proffered reason for his termination is a pretext for discrimination. (Doc. 30, 32). Plaintiff, however, claims that he is able to establish that he was terminated because of his disability. (Doc. 31).

**C. Defendant is entitled to Judgment as a Matter of law**

1. *Burden Shifting*

Plaintiff seeks to establish his discrimination claims based on circumstantial evidence. Disability discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1105 (6th Cir.2008) (applying the burden-shifting framework to an ADA claim).

Under the burden-shifting framework of *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case under the relevant statute. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1114 (6th Cir. 2001). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. If the defendant makes the appropriate showing, the burden

shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Pursuant to this framework, the Court will first determine whether Plaintiff has stated a prima facie case of disability discrimination for his termination and/or his claim for failure to accommodate. If he does, the Court will then determine whether Defendant has proffered a legitimate, non-discriminatory reason for its conduct. If Defendant satisfies these criteria, the Court will inquire as to whether a reasonable finder of fact could find that Plaintiff has shown that the proffered reasons were a pretext for disability discrimination or retaliation. If Plaintiff has produced evidence from which a jury could conclude that Defendants' proffered reasons for their actions were a pretext for discrimination or retaliation, Defendants' motion for summary judgment must fail.

*2. Disability Discrimination*

Title I of the ADA provides that a covered employer “shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a). To make out a *prima facie* case of employment discrimination through indirect evidence under Title I, a plaintiff must show that “1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.” *Macy v.*

*Hopkins Cnty. Sch. Bd. of Educ*., 484 F.3d 357, 365 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp*., 90 F.3d 1173, 1186 (6th Cir. 1996)). Similarly, to establish a prima facie case for his Failure to Accommodate Claim, Plaintiff must show that: (1) he has a disability; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See Johnson v. Cleveland City Sch. Dist*., 443 Fed.Appx. 974, 982-83 (6th Cir. 2011).

Baptist Life argues that Plaintiff cannot satisfy the second element of a *prima facie* case for either claim, *i.e*. that he was otherwise qualified for the position, with or without reasonable accommodation. In order to be a "qualified individual," an individual must establish that he is able to perform the essential functions of the position, with or without reasonable accommodation. *See* 42 U.S.C. § 1211(8). The term "essential function" means the fundamental job duties of the employment position the employee with a disability holds or desires. *See* 29 C.F.R. 1630.2(n)(3). Compliance with an employer's policies and procedures, as well as compliance with an employer's instructions or directives, are essential functions of any job. *See*, *e.g.*, *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852 (7th Cir. 2005):

> However, the ADA does not shelter disabled individuals from adverse employment actions if the individual, for reasons unrelated to his disability (such as . . . insubordination . . .), is not qualified for the job or is unable to perform the job's essential functions or fulfill the requirements of the position as prescribed by the employer or fails to meet his employer's expectations.

*Id*. at 862 (citations and internal quotations omitted).

Here, the undisputed evidence clearly establishes that Plaintiff repeatedly

disregarded Dr. Long's unambiguous mandates to discontinue his inquiring into Ms. Ipps personnel file and to refrain from disclosing private and confidential personal information. (Doc. 29, Ex. 2, 3, 6). The evidence further establishes that Plaintiff continued to contact members of Baptist Life' Board of Directors after being told that such contact was prohibited. *Id.* at Ex. 6. Plaintiff's insubordination and failure to comply with Dr. Long's directives, establish that he was unable to perform the essential function of his job.

Next, in analyzing whether Plaintiff is qualified to perform the essential functions of his job, the Court must consider whether the job can be performed with or without reasonable accommodation. *See Brown v. Chase Brass & Copper Co*., 14 F. App'x. 482,486 (6th Cir. 2001). As noted above, the ADA prohibits discriminating "against a qualified individual with a disability," 42 U.S.C. § 12112(a) (2008), and defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," id. § 12112(b)(5)(A). The Act defines "reasonable accommodation" to include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... [or] other similar accommodations for individuals with disabilities. Id. § 12111(9). An ADA plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862, 870 (6th Cir.2007) (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)).

Here, there is no evidence in the record that Plaintiff made any request for a reasonable accommodation because of his brain injury. On July 21, 2011, Plaintiff sent an email to Dr. Long indicating that he had a disability and stated a desire for a reasonable accommodation. (Doc. 29, Ex. 4). Plaintiff's email states, *in toto*:

> *I am being discriminated against due to my coverage under the American's with Disabilities Act; I have submitted my reasonable accommodations that I have requested/asked for going forward.*
>
> *I am also being retaliated against due to bring up this information about my Disability in front of Dr. Long, Mr. Kester, Linda Ipp, and Erin Koshover. Ms. Linda Ipp has made verbal statements to me that have been totally discriminatory in nature, yesterday before we left from work.*
>
> *She stated, that she doesn't believe that I have a disability and that no reasonable accommodations will be meet[sic]*
>
> *Sincerely,*
>
> *Ryan Woodle*

*Id*.

Dr. Long responded with the following email:

> *Ryan,*
> *I have received your claim of discrimination and request for reasonable accommodations. I need to know specifically what adverse action has been taken against you rising to the level of discrimination and I also need to know exactly what it is you are requesting as accommodations.*

*Id.*

The evidence of record does not contain any evidence indicating that Plaintiff ever replied to Dr. Long's July 21, 2011 email asking him to identify the specific accommodations he was seeking. Also, Baptist Life never received any other documentation from Plaintiff regarding his request for an accommodation.

Plaintiff, however, claims that he provided a hand-written request for several

specific accommodations to Dr. Long and Linda Ipp on July 20, 2011. (Doc. 29, pp. 147-48; see also Doc. 29, Ex. 17). While this document is dated July 22, 2011, Plaintiff testified that he gave it to Baptist Life on July 20, 2011. *Id.,* p. 148. However, Baptist Life has no record of receiving this document on July 20, 2011 or at any other time. Furthermore, in their subsequent phone conversation on July 21, 2011, Dr. Long stated that he had never received a request for a reasonable accommodation from Plaintiff. *Id*., p. 7. In response, Plaintiff agreed to provide Dr. Long with documentation concerning the accommodations he was seeking. *Id*., p. 14. Thus, the undisputed evidence of records fails to establish that Plaintiff requested an accommodation for his disability.

Moreover, pursuant to the medical certification submitted by Plaintiff, there is no job modification or accommodation that exists that would enable Plaintiff to perform the affected essential functions. (Doc. 29, Ex. 11, p. 4). Accordingly, the undersigned finds that Plaintiff has failed to establish that he was qualified to perform the essential elements of his position, a necessary element to establish a *prima facie* case of discrimination under either claim.

In light of this determination, the undersigned also finds that Plaintiff cannot establish the fourth and fifth elements of a *prima facie* case of disability discrimination based on failure to accommodate, *i.e*. that Plaintiff proposed and identified a reasonable accommodation and that Baptist Life failed to provide Plaintiff the necessary accommodation. As noted by Baptist Life, Plaintiff did not propose or identify an actual accommodation to Baptist Life, nor did he indicate the type of accommodation that would be necessary to permit him to perform the essential functions of his job. Rather, he merely indicated his desire for “an” accommodation. This generalized request for an

accommodation is insufficient for Plaintiff to carry his burden; voicing the phrase "reasonable accommodation" is not enough. *Jakubowski v. Christ Hosp., Inc*., 627 F.3d 195 (6th Cir. 2010) (If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable). *See also Johnson v. Cleveland City School Dist*., 443 Fed.Appx. 974, 983 (6th Cir. 2011) ("an employee's [ADA] claim must be dismissed if the employee fails to identify and request such reasonable accommodations."). As noted above, the undisputed evidence of records fails to establish that Plaintiff's requested and identified a specific accommodation for his disability. As such, he has failed to satisfy the fourth element of his prima facie case for his Failure to Accommodate Claim.

Last, Plaintiff cannot establish that Baptist Life failed to provide an accommodation, because he did not request a reasonable accommodation. As noted by Baptist Life, it specifically asked Plaintiff to provide it with information concerning an accommodation. (Doc. 29, Ex. 4). Plaintiff failed to do so.

In light of the foregoing, the undersigned finds that Plaintiff has failed to establish a *prima facie* case of disability discrimination based on his termination and/or his alleged failure to accommodate claim.

*3. Baptist Life's legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff's arguments regarding pretext*

Even if the Plaintiff could establish a *prima facie* case of discrimination, Baptist Life has proven a legitimate, nondiscriminatory business purpose for its actions. The uncontested evidence shows that Baptist Life terminated Plaintiff based upon his insubordination and failure to follow Dr. Long's directive. Plaintiff fails to provide any evidence to establish that the stated reasons for Plaintiff's termination had no basis in

fact; did not actually motivate Baptist Life's decision; or were insufficient to warrant the decision. See *Manzer,* 29 F.3d at 1084.

In light of the foregoing, Plaintiff has failed to rebut defendant's legitimate non-discriminatory reasons for his termination and has failed to produce any evidence that Baptist Life intended to discriminate against plaintiff on the basis of his disability. *See Thurman*, 90 F.3d at 1166 (citing *Hicks*, 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.)" Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and Day Spa, Inc*., Case No. 1:09-cv-882, 2011 WL 379097, * 7 (S.D. Ohio 2011) (J. Weber). Plaintiff's unsupported conclusions are insufficient to meet his burden of establishing that Baptist Life's proffered reasons for his termination were a pretext for racial discrimination.

**III. Conclusion**

For these reasons, **IT IS THEREFORE ORDERED THAT** Defendant's motion for summary judgment (Doc. 30) is **GRANTED** and this case is therefore **TERMINATED** on the active docket of the Court.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge